865 F.2d 1269
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mary F. SHAW, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 88-1077.
 United States Court of Appeals, Sixth Circuit.
 Jan. 17, 1989.
 
 Before KEITH, KENNEDY and MILBURN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff, Mary F. Shaw ("Shaw") appeals from the district court's order granting summary judgment to the Secretary of Health and Human Services on her application for disability benefits. For the reasons set forth below, we AFFIRM.
 
 
 2
 On August 15, 1984, Shaw filed an application for disability benefits pursuant to Section 205(g) of the Social Security Act, alleging that she was unable to work as of December 15, 1983, due to the removal of her left kidney, diabetes, an ulcerated foot and poor circulation. Shaw later changed the disability onset date to September 30, 1983. This application was originally denied by the Social Security Administration and on reconsideration based on a finding that claimant was not disabled at the time her insured status expired on June 30, 1983. Shaw requested a hearing before the Administrative Law Judge ("ALJ"), who found that Shaw was not disabled because she did not suffer from any severe impairments. This decision became the Secretary's final decision when it was upheld by the the Appeals Council.
 
 
 3
 Shaw sought judicial review of the Secretary's decision in the United States District Court for the Eastern District of Michigan. On April 1, 1986, the district court found that there was not substantial evidence to support a finding that Shaw did not suffer from a severe impairment but that substantial evidence did support a finding that Shaw's disability did not meet the Listings as of June 30, 1983. The case was remanded to the ALJ for a hearing. On October 21, 1986, the ALJ ruled that Shaw was not disabled because she retained the residual functional capacity to perform her past relevant work. When the case was placed back on the district court's active docket, both parties filed motions for summary judgment. After considering the entire record, the district court granted the Secretary's motion for summary judgment. This appeal followed.
 
 
 4
 When Shaw's insured status expired on June 30, 1983, she was 45 years old. Shaw had received her high school GED in 1981, and had worked for nineteen years in the electronics industry as an assembler and line leader--a position which, according to her testimony, she was fired from because her medical condition required that she use the bathroom every 30 to 45 minutes. Shaw alleges that she has had diabetes since 1971 and that as early as 1980, she complained of a four week history of nocturia (excessive urination at night).
 
 
 5
 In 1980, Shaw was admitted to Wyandotte General Hospital. Following a full examination, her doctor indicated that her diabetes was under control and that she had cancer of the cervix. She was later readmitted to Wyandotte for a hysterectomy. She testified at the hearing that she was not hospitalized in either 1981 or 1983; however, in 1982, she was admitted to Seaway Hospital for severe urinary frequency and dysuria (painful or difficult urination). After doctors diagnosed a urinary tract infection, Shaw was given an antibiotic, placed on a diet, and began self-administered insulin treatment for her diabetes. Although she complained of pain in her toes and decreased sensation in her lower extremities, a neuromuscular examination indicated that there was no evidence of clubbing or edema in her extremities and that her cranial nerves were intact. She was released with no physical restrictions.
 
 
 6
 Shaw was treated for calluses on her left foot by Dr. Isenberg from May 1982 to July 1983. On August 10, 1983, Dr. Isenberg identified an abcess on claimant's left big toe. On January 30, 1984, Shaw was hospitalized for gangrene of the left foot, anemia and diabetes mellitus. According to a neurological examination, there was no evidence of motor or sensory deficiencies; however, tests revealed a staghorn calculus near her left kidney. A bone scan performed a month later identified soft tissue around her left ankle and foot consistent with cellulitis, but the bone scan failed to reveal definite evidence of osteomyelitis. On February 28, 1984, Shaw's left kidney was removed.
 
 
 7
 Dr. Martin Seldon, who had been Shaw's physician since 1982, was contacted on September 30, 1984. He stated that when he first examined her on February 22, 1982, she was an insulin dependent diabetic with a history of end organ damage, chronic renal disease, and arteriosclerosis obliterans of both lower extremities.
 
 
 8
 In March 1985, Shaw was again hospitalized for ulcerations of her left foot. The medical record showed that her diabetes was controlled by insulin but that there was some indication of septic arthritis or localized osteomyelitis. According to a letter written by Dr. Seldon on May 31, 1985, Shaw sufered from severe diabetic neuropathy and peripheral vascular disease. As a result, Dr. Seldon wrote that "[i]n [his] judgment, [Shaw] [was] disabled and [would] be unable to perform any gainful employment."
 
 
 9
 Testifying at the first hearing was Dr. Robert Priest, a medical advisor. Dr. Priest stated that Shaw's condition equalled the criteria of Listing 9.08A in 1984 and stated that he believed her condition had existed and progressed from 1981 to 1983. At the second hearing Dr. Lewis, a medical advisor, testified that although Shaw's frequent urination problems, open ulcers on her feet and her diabetic vascular disease would interfere with many sedentary jobs, her condition would not preclude light work so long as she spent most of the time standing rather than walking.
 
 
 10
 The vocational expert, Samuel Goldstein, testified that if Shaw's testimony was completely credible she would have been unable to perform her past relevant work as of her last insured date. Her frequent urination would have prevented assembly line work, the limitations on walking would have precluded light work and her alleged need to lie down would have prevented her from doing assembly line work.
 
 
 11
 The ALJ found that Shaw was not disabled before her insured status expired and therefore was capable of performing her past relevant work. This finding was adopted by the Secretary and became the final decision of the agency. The district court found that substantial evidence supported the Secretary's decision.
 
 
 12
 The standard for reviewing final decisions of the Secretary is whether the decision is supported by substantial evidence. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). Substantial evidence "means more than a scintilla; it means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 
 13
 An individual will be found disabled under the Social Security Act if she suffers from a mental or physical impairment that is expected to cause death or that has lasted or is expected to last for a year. Shaw contends that as a result of her diabetes she meets the Listing of Impairments (9.08A), the section dealing with diabetic neuropathy. Neuropathy is "a complication of diabetes mellitus [that is] characterized by an affection of the peripheral nerves which involves both sensory and motor fibers." W.H. Anderson Co., Stedman's Medical Dictionary 847 (3d ed. 1974). To satisfy the criteria for this listing, Shaw must demonstrate that she had diabetes mellitus with:
 
 
 14
 Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait....
 
 
 15
 20 C.F.R. Part 404, subpart P, Appendix 1 Sec. 908A. Significant and persistent disorganization of sensory or motor skills may occur in paralysis or other involuntary movements. Shaw's medical record fails to reveal any significant or persistent disorganization of motor function prior to June 30, 1983. In 1982, tests revealed that Shaw suffered from diabetes mellitus but there was no diagnosis of diabetes neuropathy. In fact, there was no evidence of diabetes neuropathy in Shaw's record until March 15, 1985, when a conclusive diagnosis was confirmed. The ALJ found that although Shaw had several severe diseases related to her diabetes and had had a hysterectomy and left nephrectomy, these impairments did not reach the level of a listed impairment.
 
 
 16
 To be eligible for disability benefits, a claimant must establish that they became disabled at a time when they were covered by disability insurance. If a claimant becomes disabled after the insured status has expired, benefits will be denied. Estep v. Weinberger, 525 F.2d 757 (6th Cir.1975). In this case, Shaw's insured status expired on June 30, 1983, yet the medical evidence indicates that Shaw's condition did not meet the Listings before 1984, at the earliest.
 
 
 17
 Shaw argues that even if she does not meet the Listings, she did not retain the residual functional capacity to return to her past relevant work. However, the available medical evidence indicates that at the time her insured status expired on June 30, 1983, she retained the residual functional capacity to perform her past relevant work. The Secretary found that Shaw's allegation that her post insured medical condition should be considered was not supported by existing case law. See, Estep v. Weinberger, 525 F.2d 757 (1975).
 
 
 18
 Shaw's medical record fails to substantiate her claim for disability. Her doctors indicated that her diabetes was under control with insulin and that she had responded favorably to treatment for her urinary frequency and the ulcers on her feet.
 
 
 19
 Shaw argues that Dr. Priest's testimony at the first hearing supports her claim that she was disabled and unable to work. During the ALJ's questioning of Dr. Priest, it was disclosed that the doctor's conclusions were based on the symptons described by Shaw and her description of her medical history. Since the ALJ questioned Shaw's credibility, Dr. Priest's conclusions that Shaw's diabetic condition met the requirements of the Listings during her insured status were not considered.
 
 
 20
 Once the ALJ determined that Dr. Priest's opinions and the medical evidence did not support Shaw's allegations, the only evidence left was Shaw's subjective testimony. Shaw's testimony, however is full of inconsistencies. For example, she stated that her physical condition began to deteriorate in 1981 when she was forced to use the bathroom every 20 to 30 minutes. However, one friend testified that during a four hour bingo game she would use the bathroom two or three times during the game. Shaw also told the ALJ at the first hearing that in 1982 her legs would really hurt if she just walked across the street; however, in 1982 her doctors reported that she had no pain, burning or cramping in her ankles and that she was responding well to treatment. At her second hearing she did not mention the pain in her legs at all but merely said that they would not carry her.
 
 
 21
 We find that substantial evidence exists to support the decision of the Secretary that Shaw did not meet the Listings and that she retained the residual functional capacity to return to her past relevant work. Accordingly, the judgment of the Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, is hereby AFFIRMED.